UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KAREN SCHARDAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15CV1613 HEA |
| | ) | |
| ALLIED INTERSTATE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Compel Arbitration and Stay Proceedings Pending the Completion of Arbitration [Doc 19], Plaintiff's Motion for Partial Summary Judgment, [Doc. No. 21], and Defendant's Motion to Stay Proceedings regarding Plaintiff's Motion for Summary Judgment, [Doc. No. 29]. For the reasons set forth below, the Motion to Compel Arbitration is granted.

## Background

Plaintiff (Schardan) filed this action against Defendant (Allied) for violations of the Telephone Consumer Protection Act of 1991 (TCPA), 47 U.S.C. 227 *et seq.*; the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. 1692 *et seq.*; and invasion of privacy. Plaintiff opened a J.C. Penny credit card on August 29, 2010 (the "J.C. Penny Account") and a Walmart credit card (the "Walmart

Account") on June 8, 2014 (together the "Accounts). Both cards were issued by GE Capital Retail Bank, now Synchrony Bank, which is headquartered in Utah. The agreements of the Accounts (the "Agreements") are identical, except for the names of each retail store.

Defendant asserts it contacted Plaintiff only after being contracted by Synchrony Bank to collect an outstanding debt Plaintiff owed for defaulting on her credit cards. Defendant asserts that the contract signed between Plaintiff and Synchrony provides that all disputes arising from the contract must be settled through arbitration. On May 23, 2017, Defendant filed a Motion to Compel Arbitration and Stay Proceedings Pending the Completion of Arbitration. In response, Plaintiff argues that the Agreements are not arbitrable and, in the alternative, that Defendant has waived the right to arbitration through its participation in litigation.

**Considerations to Compel Arbitration**

Before compelling arbitration, a district court must determine (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement. *Robinson v. EOR-ARK, LLC,* 841 F.3d 781, 783 (8th Cir. 2016). Any doubts raised in construing contract language on arbitrability should be resolved in favor of arbitration. *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 795 (8th Cir. 2005).

Under Section 2 of the Federal Arbitration Act (FAA), "written arbitration agreements [are] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract." *Anderson v. Carlisle*, 129 S.Ct. 1896, 1901 (2009). Section 2 "creates substantive federal law regarding the enforceability of arbitration agreements, requiring courts to place such agreements upon the same footing as other contracts." *Id.* (quotations omitted). "Section 3, in turn, allows litigants already in federal court to invoke agreements made enforceable by Section 2." *Id.* "That provision requires the court, on application of one of the parties, to stay the action if it involves an issue referable to arbitration under an agreement in writing." *Id.*

A. A valid arbitration agreement between Plaintiff and Synchrony Bank exists.

State contract law governs whether the parties have entered into a valid arbitration agreement. *Robinson*, 841 F.3d at 784. Relevant to the Court's determination as to whether a valid agreement exists are the actual terms of the agreement. *Id.* The Agreements between Plaintiff and Synchrony state:

> "**This Agreement**. This is an Agreement between you and GE Capital Bank, 170 Election Road, Suite 125, Draper, UT 84020, for your credit card account shown above. By opening or using this account, you agree to the terms of the entire Agreement. The entire Agreement includes the four sections of this document, the application you submitted in connection with the account. These documents replace any other agreements relating to your account that you or we made earlier or at the same time."

Further,

> "**Governing Law**: Except as provided in the Resolving a Dispute with Arbitration section, this Agreement and your account are governed by federal law, and to the extent state law applies, the laws of Utah without regard to its conflicts of laws principles. This agreement has been accepted by us in Utah."
>
> "**Resolving a Dispute with Arbitration**: Please read this section carefully. If you do not reject it, this section will apply to your account, and most disputes between you and us will be subject to individual arbitration. . . ."
>
> "**What Claims are Subject to Arbitration**:
> 1. If either you or we made a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or (Wal-Mart Stores Inc./ J.C. Penny) if it relates to your account as noted below.
> 2. We will not require you to arbitrate: (1) any individual case in small claims court or your state's equivalent, so long as it remains an individual case in that court; or (2) a case we file to collect money you owe us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate."
>
> "**Governing Law for Arbitration**: This Arbitration section of your agreement is governed by the Federal Arbitration Act (FAA). Utah law shall apply to the extent state law is relevant under the FAA. The arbitrator's decision will be final and binding, except for any appeal right under the FAA. Any court with jurisdiction may enter judgment upon the arbitrator's award."
>
> "**How to reject this section**. You may reject this arbitration section of your Agreement. If you do that, only a court may be used to resolve any dispute or claim. To reject this section, you must send us a notice within 60 days after you open your account or we first provided

> you with your right to reject this section. The notice must include your name, address and account number, and must be mailed to GE Capital Retail Bank, PO Box 965012, Orlando, FL 32896-5012. This is the only way you can reject this section."

Utah contract law governs the Agreements. Pursuant to the Utah Statute of Frauds, "A credit card agreement is binding and enforceable without any signature by the party to be charged if:

> i. The debtor is provided with a written copy of the terms of the agreement;
> ii. The agreement provides that any use of the credit offered shall constitute the acceptance of those terms;
> iii. After the debtor received the agreement, the debtor, or a person authorized by the debtor, requests funds pursuant to the credit agreement or otherwise used the credit offered."

Utah Code Ann §25-5-4(2)(e), *MBNA America Bank, N.A. v. Goodman*, 140 P.3d 589, 592 (Utah App. 2006).

Plaintiff does not dispute receiving written copies of the terms of the Agreements, either when she opened each line of credit, or in the mail, in her Complaint. Nor does she attest to not receiving them in her Affidavit. Rather, she admits that Defendant was attempting to collect a debt stemming from these Agreements. Further, she requests that this Court release her from the debt.

Plaintiff agreed to the terms of the Agreements by using her credit card. Though it was her right, Plaintiff did not reject the Arbitration Agreement in her Agreements by sending a notice within 60 days of opening her account, or 60 days

after Synchrony provided her with an updated Agreement. Both Arbitration Agreements between Plaintiff and Synchrony are valid.

B.  The dispute between Plaintiff and Defendant falls within the terms of the Agreements.

It is an elementary contract law is that, as a general rule, only parties to the contract may enforce the rights and obligations created by the contract. *Robinson*, 841 F.3d at 783. Only if the written contract's clear intent is to confer rights upon a third party may that third party enforce rights and obligations of the contract. *Id*. A litigant who was not a party to an arbitration agreement may invoke the Federal Arbitration Act (FAA) if the relevant state contact law allows the non-litigant to enforce the agreement. *Anderson v. Carlisle*, 129 S.Ct. 1896, 1903 (2009). As established under the terms of the Agreements, Utah state contract law is dispositive here.

The existence of a third party beneficiary status is determined by examining a written contract. *Wagner v. Clifton*, 62 P.3d 440, 442 (Utah 2002). The written contract must show that the contracting parties clearly intended to confer a separate and distinct benefit upon the third party. *Id*. If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law. *Id.* Whether the contract itself is ambiguous is also a question of

law. *Id.* An ambiguity exists if the contract provision is susceptible to more than one reasonable interpretation. *Id*

Here, the Agreements are unambiguous regarding third parties.

> "**Consent to Communications**: You consent to us contacting you using all channels of communication and for all purposes. We will use the contact information you provide to us. You also consent to us and any other owner or servicer of your account contacting you using any communication channel. This may include text messages, automatic telephone dialing systems and/or an artificial or prerecorded voice. This consent even applies if you are charged for the call under your phone plan. You are responsible for any charges that may be billed to you by your communications carrier when we contact you."

> "**Assignment**: We may sell, assign or transfer any or all of our rights or duties under this Agreement or your account, including our rights to payments. We do not have to give you prior notice of such action. You may not sell, assign or transfer any of your rights or duties under this Agreement or your account."

In both the "Consent to Communications" and "Assignment" the Agreements clearly demonstrate that Synchrony Bank anticipated its use of contracted debt collectors upon default of borrowers. The Agreements also clearly show the intentions of Synchrony to assert its right to sell, assign, or transfer any or all of their rights to a third party, which would be provided with all of the contact information provided by Plaintiff to Synchrony upon opening her account. Here, the Defendant is that third party. Upon Plaintiff's default on the Agreements,

Synchrony asserted its rights to contract Defendant for the collection of the overdue balance. Plaintiff agreed to be contacted by Synchrony or its agents under the terms of the Agreements.

The Arbitration Agreements are "valid, irrevocable, and enforceable" under the FAA. The dispute between Plaintiff and Defendant falls within the terms of those Agreements. The dispute must go to arbitration for the claims.

### Waiver of Right to Arbitrate

Plaintiff argues that, in the event this Court grants Defendant's Motion to Compel Arbitration, this Court should find that Defendant has waived its right to arbitration through its participation in pre-trial litigation.

Waiver of a contractual right occurs when a party to a contract intentionally acts in a manner inconsistent with its contractual rights, and, as a result, prejudice accrues to the opposing party or parties to the contract. *ASC Utah, Inc. v. Wolf Mountain Resorts*, 245 P.3d 184, 193 (Utah 2010). In the context of arbitration, this amounts to a two-part test, known as the *Chandler* test, to determine if a party has waived its contractual right: (1) whether the party seeking to assert the right has participated in litigation to the point inconsistent with the intent to arbitrate, and (2) whether the opposing party has been prejudiced as a result. *Id.* at 194.

In order to determine whether a party substantially participated in litigation, as required to waive its right to arbitration, the Court must consider the actions of

the party seeking arbitration, and whether those actions evidence intent to submit to the jurisdiction of the court and pursue redress through litigation. *Id.* Factors to be considered include whether the party seeking arbitration ever asserted its right to do so, whether the party participated in extensive motions before the court, participated in extensive discovery, or allowed a considerable amount of time to pass before invoking its right to arbitration. *Id.*

Here, in its Answer to Plaintiff's First Amended Complaint, Defendant stated, "Upon information and belief, plaintiff may be contractually obligated to arbitrate any dispute, claim or controversy which arises out of the subject matter set forth in the instant litigation," on December 4, 2015. Defendant filed the Motion to Compel Arbitration and Stay Proceedings on May, 23, 2016. Between Defendant's answer and the motion before the Court today, Plaintiff and Defendant filed a Joint Scheduling Plan on February 18, 2016 by order of the Court, and the case was set for trial on March 13, 2017. Plaintiff also filed a Motion to Compel the Production of Documents by Defendant on May 4, 2016, and Defendant filed its Response in Opposition on May 11, 2016. Defendant filed this Motion to Compel Arbitration on May 23, 2016. On the same day, but after the filing of Defendant's motion here, the Plaintiff filed a Motion for Partial Summary Judgment and included in her filing discovery documents.

Despite Plaintiff's assertion that Defendant participated in extensive pre-trial litigation, the record simply does not support such a conclusion. Defendant asserted its right to arbitration in its Answer to the Amended Complaint by Plaintiff. The Joint Scheduling Plan was ordered by the Court. Upon Plaintiff's Motion to Compel Production of Documents, Defendant filed a response in opposition 7 days later and its Motion to Compel Arbitration 12 days after that. There has been no extensive pre-trial litigation.

Defendant has not waived its right to arbitration by participating in extensive pre-trial litigation. Therefore, it is unnecessary for the Court to continue to the second step of the *Chandler* test. Plaintiff has not been prejudiced as there has been no participation in litigation to the point inconsistent with the intent to arbitrate by Defendant.

**Conclusion**

Based on the foregoing, the Court concludes Defendant, as a third party, may invoke the Arbitration Agreements between Plaintiff and Synchrony Bank, and that Defendant has not waived its right to arbitration. The Motion to Compel Arbitration and Stay Proceedings will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration and Stay Proceedings, [Doc No. 19], is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment, [Doc. No. 21], is **denied**, without prejudice.

**IT IS FURTHER ORDERED** that Defendant's Motion to Stay Proceedings regarding Plaintiff's Motion for Summary Judgment, [Doc. No. 29], is **denied**, as moot.

Dated this 8th day of February, 2017.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE